UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| FRANK SURVEYING CO., INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:22-CV-2837-B |
| | § | |
| MANHARD CONSULTING, LTD., | § | |
| M. DILLON HARP & ALLEN | § | |
| PELOQUIN, | § | |
| | § | |
| Defendants. | | |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff Frank Surveying Co., Inc. ("FSC") and Defendant Manhard Consulting, Ltd.'s Amended Joint Motion to Seal. (Doc. 283). For the reasons set forth below, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

I.

BACKGROUND

At its crux, this case concerns the alleged misappropriation of trade secrets and confidential information.[1] In FSC's Amended Complaint, FSC asserts that it "holds certain trade secrets, including its 'base map' drawings, financial information, and staffing information." Doc. 46, Pl.'s Am. Compl., ¶ 35. In FSC's Motion for Partial Summary Judgment, FSC explains that its base map files contain "legal opinions, boundary interpretations, field notes, and control points." *See* Doc. 157, Pl.'s Mot. Partial Summ. J., 8. However, FSC does not provide greater clarity as to the other

---

[1] A more fulsome explanation of the factual background can be found in this Court's January 11, 2024 Memorandum Opinion & Order granting in part and denying in part FSC's Emergency Motion for Temporary Restraining Order. Doc. 2, Mem. Op. & Order, 1–2.

- 1 -

two categories of purported trade secret information: financial information and staffing information.

On May 13, 2024, FSC filed the instant Amended Joint Motion to Seal. *See* Doc. 283, Am. J. Mot. Seal. In addition, FSC filed the corresponding Appendix with its proposed redactions, along with a second copy of the Appendix, unredacted in its entirety, so that the Court could conduct the necessary balancing. Doc. 284, App'x; Doc. 285, App'x. For the purposes of this Order, this Court's analysis corresponds with the Appendix in Support of FSC's Amended Motion to Seal.

As will be discussed further in this Opinion, there are two overarching problems with the parties' Motion. First, FSC seeks to seal "trade secret" information but it has not explained why a *purported* trade secret alone serves as an adequate nondisclosure interest. Determining whether information is a trade secret is a question of law. There is no explanation why, for the purposes of sealing, the Court must rely on a party's say-so of what a trade secret is to find that the "line-by-line balancing" of the public's common law right of access against that party's interest favors nondisclosure. *June Med. Servs., L.L.C. v. Phillips*, 22 F.4th 512, 521 (5th Cir. 2022). Indeed, if courts were to seal materials simply based on a party's bald assertion that the materials contained trade secrets, it would create a perverse incentive for all parties to assert that sensitive materials were trade secrets. As a secondary matter, the Court cannot adequately balance the public and nondisclosure interests when it does not know what financial or staffing information is at issue. For these reasons alone, sealing is inappropriate.

II.

## LEGAL STANDARD

The Fifth Circuit recognizes a "working presumption . . . that judicial records should not be sealed." *June Med. Servs.* 22 F.4th at 521. The same principle applies to redacting judicial records. *See id.*; *e.g.*, *Katherine P. v. Humana Health Plan of Texas, Inc.*, No. 1:14-CV-326-RP, 2019 WL 13177051, at *1 (W.D. Tex. Mar. 25, 2019). Maintaining transparency through public access to judicial records "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *June Med. Servs.*, 22 F.4th at 521 (citation omitted).

Redacting can be preferable to sealing when the redactions are less restrictive on the public's right of access. *See United States v. Ahsani*, 76 F.4th 441, 453 (5th Cir. 2023) (recognizing redaction "is often practicable and appropriate as the least restrictive means of safeguarding sensitive information"). To decide whether to permit redactions, "the court must undertake a document-by-document, line-by-line balancing of the public's common law right of access against the interests favoring nondisclosure." *June Med. Servs.*, 22 F.4th at 521 (internal quotations omitted). Ultimately, "courts should be ungenerous with their discretion," and any necessary redaction must be "congruent to the need." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418, 420 (5th Cir. 2021).

## III.

## ANALYSIS

FSC proposes various redactions to Exhibits 1, 2, 3, 4, 5, 6, 7, 8, and 9. Doc. 283, Am. J. Mot. Seal, ¶ 5. Defendant Manhard Consulting, Ltd. ("Manhard") proposes various redactions to Exhibits 1, 5, 6, and to Exhibit A. *Id.* at ¶ 7. The parties contend that the proposed redactions are narrowly tailored to maintain the confidentiality of client and business information. *Id.* at ¶ 12.

The parties emphasize that this is a lawsuit between private litigants concerning alleged matters of breach of contract, breach of fiduciary duty, and trade secret misappropriation. *Id.* at ¶ 11. Thus, the parties argue, there is little legitimate public interest in the subject matter of this lawsuit. *Id.*

Counsel for the parties have conferred with one another and do not oppose the requests made by each respective party. *Id.* at ¶ 3. However, seeking unopposed redactions does not alone satisfy a party's obligation to adequately justify how its nondisclosure interests overcome the public's interest in accessing information in the judicial record. *See June Med. Servs.*, 22 F.4th at 521; *see also Binh Hoa Le*, 990 F.3d at 420 (noting that the Court's duty to the public docket is easily overlooked in agreed upon sealing motions). The Court balances the competing interests with respect to each exhibit below.

A.   *Exhibit 1*

Exhibit 1 concerns the "Initial Janik Forensics November 2023 Report," which is also labeled as Exhibit I in FSC's Appendix in Support of its Response to Defendants' Motion to Strike & Exclude Plaintiff's Expert El Janik. ("Appendix 262"). *See* Doc. 284, App'x, 1–33; Doc. 283, Am. J. Mot. Seal, ¶ 5.

    1.   <u>FSC's Requests</u>

To facilitate its review, this Court has divided FSC's proposed redactions into three categories: high-level financial information, financial models, and itemized financial information. FSC makes two arguments in support of its proposed redactions. *See* Doc. 283, Am. J. Mot. Seal, ¶ 5. As a preliminary matter, the Court finds FSC's trade secret argument unpersuasive. FSC asserts that "part of this information is at issue in this case as a trade secret misappropriated by Manhard to form a competing land surveying division in Texas." *Id.* Based on a review of the pleadings and motions, it is unclear what specific information FSC is bringing forward as a trade secret in this

case. More importantly, FSC provides no support for its argument that an alleged trade secret is *per se* subject to sealing. Accordingly, the Court's "line by line" analysis of Exhibit 1 is impossible to conduct based on FSC's trade secret argument.[2] *See June Med. Servs.*, 22 F.4th at 521.

FSC's other argument is that this information "holds significant value to a competitor" by describing revenue, information, and drivers of such profits. Doc. 283, Am. J. Mot. Seal, ¶ 5. Thus, FSC considers the information "highly confidential business information and does not publicly disclose it." *Id.*

   a. High-Level Financial Information

The Court begins with the first category of proposed redactions, high-level assessments of FSC's financial information. *See* Doc. 284, App'x, 8–9, 11–12, 15–18. Within this category, FSC seeks to redact various graphs and charts depicting FSC's total, projected, and client revenues. *Id.* The Court recognizes that FSC likely has good reason for wanting to seal this private financial information. However, FSC fails to provide a link between the contents at issue and its final interest. In other words, FSC does not explain why such information is regarded as "highly confidential" or how it could "hold significant value to competitors." Doc. 283, Am. J. Mot. Seal, ¶ 5. Instead, FSC relies on conclusory statements to support a blanket claim of confidentiality. *See id.*; *Binh Hoa Le*, 990 F.3d at 418, 420. Accordingly, FSC cannot support its position by merely

---

[2] This argument alone is often rejected. *See Zambrano v. Ins. Auto Auctions Corp.*, No. CV 20-367, 2021 WL 4950849, at * 1 (W.D. La. Sept. 15, 2021) (denying motion to seal document containing "internal policies" and "common sense safety procedures" and rejecting argument that the document was equivalent to "trade secrets"); *Mize v. BMW of N. Am., LLC*, No. 2:19-CV-7-Z-BR, 2021 WL 4047041, at *1 (N.D. Tex. May 20, 2021) (denying the defendant's motion to seal "information that is proprietary and sensitive from both a technical and procedural standpoint," including "trade secrets," research, and development); *Mine Safety Appliances Co. v. N. River Ins. Co.*, 73 F. Supp. 3d 544, 560 (W.D. Pa. 2014) ("Documents do not contain trade secrets merely because a party has deemed them to be confidential. To the contrary, trade secrets generally have independent status under the substantive law.") (internal marks omitted).

asserting that the documents "identif[y] and describ[e] the revenue and profit-related information for a land-surveying business" without tying that information to an actual competitive harm. Doc. 283, Am. J. Mot. Seal, ¶ 5 Because FSC failed to "articulate a specific harm that would be caused by the disclosure of the documents," the Court is left with little substance to balance. *Vantage Health Plan*, 913 F.3d at 451.

With respect to the client revenues, FSC cites this Court's reasoning in *MIECO*. *See* Doc. 284, App'x, 11–12; *MIECO LLC v. Pioneer Nat. Res., USA, Inc.,* No. 3:21-CV-1781-B, 2022 WL 18034481 (N.D. Tex. Oct. 28, 2022) (Boyle, J). While the Court agrees that the confidential information of third parties can outweigh the public's common law right of access, the principle is inapplicable here. In *MIECO*, this Court granted a motion to seal documents exposing a plaintiff's confidential third-party contracts, on the grounds that "the public's common law right of access [was] limited with respect to these confidential contracts that are not between the parties to this lawsuit." *MIECO*, 2022 WL 18034481, at *2. Here, however, the graphs that FSC seeks to redact show the revenues from its "largest" and "non-largest" clients. Doc. 284, App'x, 11-12. Critically, these graphs do not disclose any client names, rendering it impossible to discern any parallel, client-specific financial information. *Id.* Such anonymity markedly contrasts with the contracts describing terms for identifiable third-parties. *MIECO*, 2022 WL 18034481, at *2.

For the reasons set forth above, FSC's conclusory assertions of confidentiality and commercial sensitivity for this high-level financial information are overshadowed by the "arduous" presumption against sealing judicial records. *See June Med. Servs.*, 22 F.4th at 522. Accordingly, the Court **DENIES WITHOUT PREJUDICE** FSC's proposed redactions.

    b. *Financial Models*

Next, the Court turns to the second category of FSC's proposed redactions, which concern calculated models of lost net profits for FSC's surveying work in its Fort Worth Division. *See* Doc. 284, App'x, 2–6, 23–24. These three models, (Low, Moderate, High), were calculated from historical and projected financial data and repeatedly appear throughout the exhibits. *See id.* FSC seeks to redact the models and the corresponding calculations because they "hold[] significant value to a competitor." Doc. 283, Am. J. Mot. Seal, ¶ 5. However, as stated above, FSC fails to provide a non-speculative explanation for how a competitor could actually harm FSC with access to these financial models. Accordingly, the Court **DENIES WITHOUT PREJUDICE** FSC's proposed redactions.

   c. *Itemized Financial Information*

Finally, the Court turns to the third category of FSC's proposed redactions, which concerns two itemized profit statements for FSC's Fort Worth surveying division. *See* Doc. 284, App'x, 13-14. The main difference between this category of information and the previous categories is that its degree of specificity makes a competitive disadvantage clear. For instance, these statements include itemized lists of expenses, reflecting the exact dollar amounts FSC spent on communications, professional services, vehicles, travel, insurance, etc. *Id.* Moreover, the lists correspond with a specific date range. *Id.* By seeing FSC's itemized expenses in running its land surveying business, a competitor can revise its own expenses or change its pricing strategy knowing FSC's expenses do not allow it to offer similar pricing. In other words, the lists are granular enough that their commercial sensitivity speaks for itself. Doc. 283, Am. J. Mot. Seal, ¶ 5. Accordingly, FSC's proposed redactions are **GRANTED**.

   2. <u>Defendants' Requests</u>

To facilitate its review, the Court has divided Manhard's proposed redactions into two categories: high-level financial information and itemized financial information. *See* Doc. 284, App'x, 10, 19–21. In support of these redactions, Manhard asserts that it considers "internal financial data to be confidential and commercially sensitive." Doc. 283, Am. J. Mot. Seal, ¶ 7. Specifically, Manhard contends that this information would "provide competitors with a window into Manhard's internal operational capabilities and budget, and if obtained by a competitor would likely cause Manhard competitive harm." *Id.*

### a. High-Level Financial Information

The Court begins with the first category of proposed redactions, which concerns high level assessments of financial information. *See* Doc. 284, App'x, 10, 19–20. Within this category, Manhard seeks to redact various graphs depicting Manhard's projected revenue and profit, as well as income statements for its Fort Worth surveying division. *See id.* While Manhard may have legitimate reasons for redacting this information, by inadequately explaining how such general financial data is commercially sensitive and could cause competitive harm, Manhard did not meet its burden. *Binh Hoa Le*, 990 F.3d at 418, 420; *Vantage Health Plan*, 913 F.3d at 451. Without further explanation from Manhard, the Court cannot discern how its total profits, expenses, or revenue would provide a competitor with a tangible advantage over Manhard. *Id.* Unable to conduct the requisite "line-by-line" balancing, the Court finds that Manhard's confidentiality and commercial sensitivity arguments do not outweigh the public's common law right of access and **DENIES WITHOUT PREJUDICE** the proposed redactions. *June Med. Servs.*, 22 F.4th at 521.

### b. Itemized Financial Information

Turning to the second category of proposed redactions, Manhard seeks to redact an itemized income statement, which provides specific price breakdowns for Manhard's revenues and operating expenses. *See* Doc. 284, App'x, 21. Specifically, the statement divides Manhard's operating expenses into 27 different categories, ranging from health insurance to office supplies. *Id.* As explained above, the Court can understand how such a granular, itemized list could prove beneficial to a competitor. Thus, the Court finds Manhard's nondisclosure interest outweighs the public interest, *June Med. Servs.*, 22 F.4th at 521, and **GRANTS** the proposed redactions. *See* Doc. 283, Am. J. Mot. Seal, ¶ 7.

B.    *Exhibit 2*

Exhibit 2 concerns "El Janik's Deposition Testimony," which is also labeled as Exhibit J in Appendix 262. *See* Doc. 284, App'x, 34–45. FSC proposes redactions for 37 different lines of testimony but relies on the same two general arguments it articulated in Exhibit 1. *Supra* 4–5; *see* Doc. 283, Am. J. Mot. Seal, ¶ 5; Doc. 284, App'x, 39, 43. The Court cannot conduct a "line-by-line" balancing of the public's right of access against FSC's interests merely based on an assertion of information containing trade secrets. *June Med. Servs.*, 22 F.4th at 521. As a litigant seeking secrecy, FSC has the burden to overcome the strong presumption favoring public access. *See BP Expl. & Prod., Inc. v. Claimant ID* 100246928, 920 F.3d 209, 211 (5th Cir. 2019). FSC has not met this burden with respect to its broad invocation of confidentiality and commercial sensitivity arguments because they are so amorphous that they could presumably cover most of the documents in this case. *See* Doc. 283, Am. J. Mot. Seal, ¶ 5. It is unclear how each of the 37 separate lines of testimony contain information outweighing the public's right of access. *June Med. Servs.,* 22 F.4th at 521. Thus, the Court **DENIES WITHOUT PREJUDICE** FSC's proposed redactions.

C.    *Exhibit 3*

Exhibit 3 concerns the "February 29, 2024 Affidavit of El Janik," which is also labeled as Exhibit N in Appendix 262. *See* Doc. 284, App'x, 46–55. FSC seeks to redact "lost profit information and historical and projected revenue and profit information of FSC, including expenses, profit rates, and customer information." Doc. 283, Am. J. Mot. Seal, ¶ 5; Doc. 284, App'x, 48–51.

The public's presumptive right of access to judicial records is highest regarding materials filed on the record in support of summary judgment. *See Binh Hoa Le*, 990 F.3d at 420. FSC failed to adequately explain why portions of the affidavit, a judicial record of high public interest, should be redacted. In fact, in support of these redactions, FSC merely recycles the same broad arguments it set out in the previous exhibits. Doc. 283, Am. J. Mot. Seal, ¶ 5. Even looking beyond FSC's assertions, the Court cannot identify anything in the affidavit that is sufficiently proprietary or competitively harmful to warrant redaction. *See* Doc. 284, App'x, 48–51. Finally, the Court finds that the "customer information" that FSC seeks to redact does not warrant redaction. *See* Doc. 284, App'x, 51. It appears that FSC is under the false assumption that any information concerning the word "client" or "customer" warrants redaction. The Court is unable to discern any reason why the non-specific "customer" information at issue is considered confidential, much less how it could provide a competitor with an advantage. *Id*. For the foregoing reasons, FSC's proposed redactions are **DENIED WITHOUT PREJUDICE**.

D.    *Exhibit 4*

Exhibit 4 concerns the "Addendum to El Janik's Report," which is also labeled as Exhibit Q in Appendix 262. *See* Doc. 284, App'x, 56–65. FSC seeks to redact "lost profit information and historical and projected revenue and profit information of FSC," including the allocation of expenses as well as the calculation of profits and profit margins. Doc. 283, Am. J. Mot. Seal, ¶ 5;

Doc. 284, App'x, 61–65. FSC relies on the same argument it articulated for sealing portions of Exhibit 1. *Id.* Accordingly, for the same reasons the Court denied redaction in Exhibit 1, FSC's proposed redactions are **DENIED WITHOUT PREJUDICE**.

E.   *Exhibit 5*

Exhibit 5 concerns excerpts from "Stuart Miller's Rebuttal Report," which is also labeled as Exhibit R in Appendix 262. *See* Doc. 284, App'x, 66–70.

1. FSC's Requests

FSC seeks to redact "customer-specific revenue information associated with its Fort Worth branch." Doc. 283, Am. J. Mot. Seal, ¶ 5. FSC relies on the same reasoning it articulated in Exhibit 1. *Id.* Here, FSC seeks to redact three charts displaying FSC's annual revenue by client. *See* Doc. 284, App'x, 68–69. The charts disclose FSC's clients by name and the amount of revenue FSC earned from each client between 2017 and 2023. *Id.* The competitive disadvantage is clear—FSC's book and business and its pricing could be exploited by offering these same clients lower pricing. While courts "should be ungenerous" in redacting or sealing information from the public, *Binh Hoa Le*, 990 F.3d at 418, the public's right of access is "not absolute." *Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 225 (5th Cir. 2020). The Court finds the interest in protecting revenue traceable to particular clients outweighs the public's common law right of access. *See June Med. Servs.*, 22 F.4th at 522. FSC's proposed redactions are **GRANTED**.

2. Defendants' Requests

Manhard seeks to redact the dollar figures contained in the Miller Report, which represent Manhard's monthly revenue by client for October 2022 through September 2023. *See* Doc. 283, Am. J. Mot. Seal, ¶ 7. Manhard considers this information to be confidential and commercially sensitive "because if it were obtained by a competitor, it would likely cause Manhard competitive

harm by disclosing recurring client revenue that can provide information on client pricing and profitability." *Id.* Moreover, "Manhard's clients expect, and some contractually require, that Manhard keep commercially sensitive client information confidential." *Id.*

Here, Manhard seeks to redact a chart displaying its monthly revenue by client. *See* Doc. 284, App'x, 70. The Court finds that the privacy interest of third-party clients unrelated to the lawsuit outweighs the public's common law right of access to the identified information. *See MIECO,* 2022 WL 18034481, at *2. Manhard's proposed redactions are **GRANTED.**

F.   *Exhibit 6*

Exhibit 6 concerns the "Appendix to the Janik Report," which is also labeled as Exhibit R in Appendix 262. *See* Doc. 284, App'x, 71–269.

    1.   <u>FSC's Requests</u>

In Exhibit 6, FSC seeks to redact "client information," "historical and projected revenue and profit information," "lost profit information and rates," "historic profit margin information," and "information regarding operating expenses, equipment, and personnel." Doc. 283, Am. J. Mot. Seal, ¶ 5(f); Doc. 284, App'x, 71–269. To facilitate its review, the Court has divided these categories into two buckets: high-level financial information and itemized financial information.

        a.   *High-Level Financial Information*

The Court begins with the first category of proposed redactions, which concerns high-level assessments of financial information. *See* Doc. 284, App'x, 74–75, 80–82, 105–07, 116–18, 135–43, 168, 174, 190–96, 228–34, 249. While FSC argues that some of this information "is not directly at issue in this case," it fails to sufficiently identify what information it is describing. Doc. 283, Am. J. Mot. Seal, ¶ 5(f). Therefore, the Court must proceed to FSC's nondisclosure interest in confidentiality and competitive sensitivity. *Id.*

Pages 74–75 and 81–82 contain four graphs reflecting FSC's revenue by "largest clients" and "non-largest clients." Doc. 284, App'x, 74–75, 81–82. These graphs do not disclose client names, rendering it impossible to discern any parallel, client-specific financial information. *Cf. MIECO*, 2022 WL 18034481, at *2. The Court finds the balancing weighs in favor of the public right of access. *June Med. Servs.*, 22 F.4th at 522.[3]

Pages 80, 105–107, 116–118, 135–143, 168, 174, 190–196, 228–234, and 249 contain various types of high-level, non-itemized financial information, including expenses, revenue, profit and loss statements, and profit margins. Doc. 284, App'x, 80, 105–07, 166–18, 135–43, 168, 174, 190–96, 228–34, 249. As mentioned above, while FSC may have legitimate reasons for redacting this information, FSC fails to demonstrate that the public's right of access comes second to its nondisclosure interests. For example, if FSC were to provide a non-speculative explanation of how a competitor could misuse each piece of financial information, it could establish why the line-by-line balancing favors redaction. Accordingly, the Court **DENIES WITHOUT PREJUDICE** FSC's proposed redactions.

    b.  *Itemized Financial Information.*

---

[3] The graph on page 74 is identical to the graph on page 11 of the Appendix. *See* Doc. 284, App'x, 11, 74. However, while FSC seeks to redact both axes of the graph in Exhibit 1, it only seeks to redact the vertical axis in Exhibit 6. *See id.* Such inconsistency further hinders the Courts ability to conduct the requisite line-by-line balancing. *See June Med. Servs.*, 22 F.4th at 522.

Next, the Court turns to the second category of proposed redactions, which concerns specific, itemized financial information. *See id.,* 108–15, 144–67, 170–73, 175–89, 197–20, 223–27, 235–39.

Pages 108–115, 144–167, 175–189, 197–220, and 235–239 contain various itemized profit and loss statements. *See id.,* 108–15, 144–67, 175–89, 197–20, 235–39. Each statement provides specific price breakdowns for FSC's operating expenses. *Id.* As explained above, the Court can understand how these granular, itemized lists would be exploited by a competitor. *June Med. Servs.*, 22 F.4th at 522. The line-by-line balancing favors redaction of these statements. *Id.* at 21.

Pages 169–173 and 223 contain six graphs concerning FSC's expenses. *See id.*, 169–73, 223. Unlike the graphs referenced in the aforementioned "high-level financial information" category, these graphs provide specific information that could grant a competitor a tangible advantage. For instance, the graphs break FSC's expenses into specific categories that a competitor could track against its own itemized "rent," "fuel," "field supplies," and "payroll" expenses. Understanding FSC's itemized expenses each month could also help a competitor find ways to underspend FSC while offering similar pricing to FSC clients. *Id.* The line-by-line balancing favors redaction of these graphs. *June Med. Servs.*, 22 F.4th at 521.

Pages 224–227 contain four balance sheets tracking the value of FSC's non-current assets on a monthly basis. *See id.*, 224–27. As explained above, the level of granularity makes this information easily exploitable by competitors. *Id.* Accordingly, the line-by-line balancing favors redaction of these balance sheets. *June Med. Servs.*, 22 F.4th at 521.

For the foregoing reasons, the Court **GRANTS** the proposed redactions identified within this category.

    2.    <u>Defendants' Requests</u>

With respect to Exhibit 6, Manhard seeks to redact "detailed internal financial data regarding the operations of Manhard," relying on the same reasoning it articulated in Exhibit 1. Doc. 283, Am. J. Mot. Seal, ¶ 7; Doc. 284, App'x, 122–29. To facilitate its review, the Court has divided these redactions into two categories: high-level financial information and itemized financial information.

### a. High-Level Financial Information

The Court begins with the first category of proposed redactions, which concerns high-level assessments of financial information. *See* Doc. 284, App'x, 122–25. Within this category, Manhard seeks to redact various graphs reflecting its monthly income statements. *Id.* Unlike the graphs that FSC sought to redact on pages 169–173 and 223, these graphs are not specific or itemized; rather, they depict high-level data, such as gross profit, total directs, and total operation expenses. *Id.* at 122–25, 169–73, 223. Manhard may have legitimate reasons for redacting this information. However, by failing to adequately explain how such general financial data is commercially sensitive and would cause competitive harm, Manhard fell short of its burden. *Binh Hoa Le*, 990 F.3d at 418, 420; *Vantage Health Plan*, 913 F.3d at 451. The "line-by-line" balancing therefore falls in favor of the public interest. *June Med. Servs.*, 22 F.4th at 521. The Court **DENIES WITHOUT PREJUDICE** the proposed redactions.

### b. Itemized Financial Information

Turning to the second category of proposed redactions, Manhard seeks to redact four income statements concerning its Fort Worth surveying division. *See* Doc. 284, App'x, 126–29. These statements provide specific, itemized price breakdowns for Manhard's revenues and

operating expenses. *Id.* Specifically, the statements break Manhard's operating expenses into 27 different categories, ranging from health insurance to office supplies. *Id.* As explained above, the Court can understand how these granular, itemized lists would be exploited by a competitor. *June Med. Servs.*, 22 F.4th at 522. The line-by-line balancing favors redaction of these statements and the Court **GRANTS** such redactions. *Id.* at 21.

G.  *Exhibit 7*

Exhibit 7 concerns "FSC's Brief in Support of its Response to Defendants' Motion to Strike and Exclude Plaintiff's Expert El Janik." *See* Doc. 284, App'x, 270–97. FSC seeks to redact two categories of information.

First, FSC seeks to redact "lost profit information and historical and projected revenue and profit information of FSC," relying on the same reasoning it articulated in Exhibit 1. Doc. 283, Am. J. Mot. Seal, ¶ 5; Doc. 284, App'x, 281–83, 288–90, 292, 294–95. These proposed redactions are identical to the redactions the Court categorized as "high-level financial information" and "financial models" in its analysis of Exhibit 1. *See id.*, 2–6, 8–9, 11–12, 15–18, 23–24. Accordingly, for the same reasons the Court denied redaction for those categories of redactions in Exhibit 1, the proposed redactions are **DENIED WITHOUT PREJUDICE**.

Next, FSC seeks to redact "client information including customer-specific revenue percentages," relying on the same reasoning it articulated in Exhibit 1. *Id.* at 292; Doc. 283, Am. J. Mot. Seal, ¶ 5. Specifically, the two redactions concern the percentage that an identified client contributed to FSC's Fort Worth office's revenues. *See* Doc. 284, App'x, 292. Because these percentages refer to an identified client, redaction is warranted for the reasons set out in the Court's analysis of Exhibit 5. The Court **GRANTS** the proposed redactions of client information.

H.  *Exhibit 8*

Exhibit 8 concerns "Peloquin's and Harp's Response to Plaintiff's Motion to Strike and Exclude in Part the Expert Testimony of Stuart B. Miller." *See* Doc. 284, App'x, 298–23. FSC seeks to redact the "lost profit and revenue information of FSC" found on two pages of the Response. Doc. 283, Am. J. Mot. Seal, ¶ 5; Doc. 284, App'x, 306–07. Specifically, FSC seeks to redact two calculations made by its expert El Janik, the first concerning the damages FSC sustained "due to Defendants' conduct," and the second concerning FSC's "annual but-for revenues." Doc. 284, App'x, 306. FSC also seeks to redact a statement made by Defendants' expert Stuart B. Miller, concerning two potential calculations of FSC's actual lost profits, dependent upon the findings of the trier of fact. *Id.* at 307.

The Court must ultimately make a finding based on the calculations at issue. As this information is central to litigation, the public's presumptive right of access to judicial records is at its highest. *See Binh Hoa Le*, 990 F.3d at 420; *see also Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 547 (7th Cir. 2002). FSC has inadequately explained why these hypothetical damage calculations outweigh the public right of access. Accordingly, the Court **DENIES WITHOUT PREJUDICE** FSC's proposed redactions.

I. *Exhibit 9*

Exhibit 9 concerns "Manhard's Response in Opposition to Plaintiff's Motion to Strike & Exclude in Part the Expert Testimony of Stuart B. Miller." *See* Doc. 284, App'x, 324–46. FSC seeks to redact the same information it sought to redact in Exhibit 8, relying on the same argument it articulated in Exhibit 1. *See* Doc. 283, Am. J. Mot. Seal, ¶ 5; Doc. 284, App'x, 331. Accordingly,

for the same reasons the Court denied redaction in Exhibit 8, FSC's proposed redactions are **DENIED WITHOUT PREJUDICE**.

J.     *Exhibit A*

Manhard seeks to redact the dollar figures and salary information contained in Exhibit A, which is also labeled as Exhibit O in Appendix 262. *See* Doc. 284, App'x, 132–33, 350–53. Exhibit A concerns an email sent by Manhard to Defendant Allen Peloquin ("Peloquin"). *Id.* The email concerns Peloquin's employment at Manhard and his proposed compensation plan. *Id.* Manhard contends that this information contains "Manhard's historical and projected revenue and profit information for 2022-2024," relying on the same reasoning it articulated in Exhibit 1. *Id.*; Doc. 283, Am. J. Mot. Seal, ¶ 7.

The Court cannot identify any rational, sufficient reason as to why Manhard would need to redact any portion of pages 351 or 352. *See* Doc. 284, App'x, 351–52. Peloquin is a defendant in this case, not a third party. *Cf. MIECO,* 2022 WL 18034481, at *2. While "many litigants would like to keep confidential the salary that they make, [and] the injuries they suffered … when these things are vital to claims made in litigation, they must be revealed." *Baxter Int'l, Inc.*, 297 F.3d at 547. Turning to the compensation plan on page 353 of the Appendix, the Court finds Manhard's proposed redactions unwarranted. *See* Doc. 284, App'x, 353. The Court acknowledges that this page contains Manhard's survey revenue and profit projections, based on projected revenue, growth, and profits. *See id.* However, as mentioned above, by failing to adequately explain how this general financial data is commercially sensitive and could cause competitive harm, Manhard does not overcome the strong presumption favoring public access. *See BP Expl. & Prod., Inc.,* 920 F.3d

at 211. Accordingly, the Court **DENIES WITHOUT PREJUDICE** Manhard's proposed redactions.

## IV.

## CONCLUSION

For the foregoing reasons, FSC and the Defendants' Amended Joint Motion to Seal is **GRANTED IN PART** and **DENIED IN PART.** The parties may file a renewed motion within 14 days to address the deficiencies described herein.

**SO ORDERED.**

**SIGNED: June 14, 2024**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE